The next case today is Mario René López Troche v. Merrick B. Garland, Appeal No. 20-1718. Attorney Nooradeen, please introduce yourself for the record and proceed with your argument. Thank you. May it please the Court. My name is Elena Nooradeen, and I represent the petitioner, Mr. López Troche, in this matter. We ask that the Court reverse the IJ and BIA's decision and grant petitioners' application for relief for the following three reasons. First, the IJ's adverse credibility decision upheld by the BIA was not supported by reasonable, substantial, and probative evidence on the record as a whole. Second, the IJ applied an incorrect standard of proof to the unable and unwilling requirement of petitioners' claim of past harm, which led to an erroneous conclusion that the petitioner did not suffer past persecution and thus was not entitled to a presumption of future persecution. And third, the IJ and BIA mischaracterized the objective evidence in the record, which affected petitioners' claim of past and future harm for withholding protection as well as protection under the Convention Against Torture. With regards to the first error, the IJ's partial adverse credibility finding against petitioner turned on two discrete issues limited to whether petitioner had ever sought protection from the police for the harm he suffered and whether the police were involved in a particular incident of harm against him. A review of the record shows that neither of these two issues present inconsistencies and thus do not uphold unsubstantial review. First, the alleged inconsistency as to whether the petitioner had ever reported harm to the police arose from the IJ's comparisons of the record of petitioner's reasonable fear interview five years prior and petitioner's counsel statement in closing, which do not reflect a sworn statement of the petitioner himself. At his hearing, petitioner was never asked whether he ever went to the police. He was asked about reporting three specific incidents of harm, namely his two rapes as a child and whether he reported threats from his former partner's family. Any testimony as to not reporting harm to the police was limited to these specific incidents and thus not inconsistent with his RFI in any way. Contrary to the assertions by the government, petitioner never testified that he had never reported any harm to the police. Furthermore, petitioner was never asked to explain or even asked about this perceived discrepancy because it was never flagged as an inconsistency while he was testifying and first came up during a question to counsel at closing by the IJ. Second, the IJ found that the description in court of an incident where he was getting into a taxi and the windows were shot out was at odds with his affidavit to the court. However, the descriptions of the IJ Reliance Zones are also not inconsistent. Petitioner never stated that the police were not there and then later stated that they were. Petitioner's statement between his affidavit, which was submitted three years prior to his hearing, is consistent with his testimony in court, that someone among a group of men shot at the taxi cab and his omission in his affidavit as to the presence of police does not, in and of itself, given the record, constitutes substantial evidence sufficient to support an adverse credibility finding. In this case... If we accepted the first argument you made, that there's no basis in the record for the BIA's statement that he stated he never had reported to police and if that premise is wrong, then the basis for their finding an inconsistency on that point is wrong. But we nonetheless thought there was substantial evidence to support its finding on the taxi... being inconsistent. What should happen in the case? Apologies, your honor, on the text of... On the taxi, the taxi incident. So in other words, there's two findings about credibility. One is about reporting and one is about the involvement of the government. If we thought that the... There's no substantial evidence for the finding of inconsistency on the reporting because the BIA's statement that he said he never reported isn't supported by the record. But we concluded that the BIA's determination about inconsistency on the taxi incident is supported by the record. What should happen in the case? Your honor, the petitioner would still merit relief in this case, namely because the issues that this adverse credibility finding by the IJ was narrow and only dealt with the issue of past persecution. Sorry, only dealt with the government's involvement, direct involvement in harm. As the government's direct involvement in harm of the petitioner is not a requirement for the petitioner to prove unable or unwilling. He can do this through the objective evidence in the record. So is the idea that if the BIA erred on the first inconsistency finding, I take it that then interacts and reinforces your argument about their failure to address the unable wrong? Yes, your honor. That's where that Justio case supports you in that regard is the idea. Yes, Rosales Justo makes it clear that it's either unable or unwilling to protect the petitioner. In this case, we argue both. But the idea is that the past persecution, if he's credible in saying that he reported incidents and nothing was done about it, then given the objective evidence, there would be a basis for finding that he can show past persecution notwithstanding the finding to the contrary and nothing in the BIA's findings would support a contrary result because it's predicated on this erroneous credibility determination. That's the idea. Correct, your honor, because the government involvement in petitioner's harm was not a requirement. Four minutes, four minutes. Unable or unwillingness could be satisfied through objective evidence. What do you say, how do you deal with the IJ's decision after he pointed out what he thought was a discrepancy between somebody let off gunshots and shattered the windows, his earlier version, and then his later version where he adds in the very consequential fact that it was the police that did it. The IJ, after relating that, then says this discrepancy is fatal to the respondent's credibility in terms of his argument that the government were actors in any of the harm that he suffered. How do you account for that suggestion that that one discrepancy the IJ viewed as fatal to that particular proposition? Your honor, our position is that it is not fatal and that finding is not based on substantial evidence in the record. What is in the record is repeated testimony by the respondent in his reasonable fear interview, then his affidavit, and then in court that he feared the national police. We don't think that this statement alone would discredit it, but regardless... Well, let me pause you on that because you're sort of fighting the hypothetical. Let's assume, and I know you don't concede it, but let's assume that we were to agree that an IJ did not abuse his discretion in finding that those two statements by the omission of a very consequential fact that was only added at the later date casts a pall on his credibility. What are we then left with as far as sustaining the credibility finding? In other words, how would we reverse that? Your honor, this court can rely on the objective evidence in the record to reverse the denial generally, regardless of the adverse credibility finding as to this one point. Does it turn on the phrase, in terms of the government's involvement in these incidents? Yes, we would argue that partially it turns on... Are you reading that phrase to be not the government involvement prong generally, but whether the government participated in the action? Yes, we read the decision and it seems to us clear from the IJ's decision, also from the BIA, that the court's finding as to government involvement was limited to the government's involvement in this particular incident. And then the reason they address the reporting separately is because that's dealing with a different question than government involvement. That's how you read the IJ? Yes, correct. These are two discrete issues that we believe the IJ used together to reach the conclusion that the government was able and willing, which we believe is incorrect and also... Can I vote? Go ahead, I'm sorry, just one last question on it. How do you read the BIA's decision, understanding of what the IJ did, with respect to its then making the credibility finding of what follows from it? Because it seems to rely on both findings, not just one of them, in service of its conclusion that his unable and unwilling claim fails altogether on credibility terms, which seems as least one way to read it would be it thought both findings were necessary to defeat the government involvement prong, which I guess would support the idea that that second, in terms of language, is just about whether the government participated in those incidents. Yes, we believe the BIA's decision uses just the term generally adverse credibility finding to not have to address different points and does so kind of summarily saying because he was not credible as to these incidents, we find that this is dooming both to his past persecution claim and also his future persecution claim, which this court and many other courts have found is incorrect. I'd like to look at the future prosecution claim. So, assuming for a minute there's enough to support adverse credibility finding, that does not necessarily doom the future persecution, as I understand, because you can have objective evidence. So, how do you think about the fact findings and what standard of review to apply to them? In other words, one could say that based on those horrible country reports, that there's an objective finding that it's hard for LGBT people in Honduras and not so much that the government is unwilling to, because I think that might be supported, but is unable to. And how is that appropriately reviewed? Is that de novo? Is that clear error? Whether there's a reasonable fear of future persecution because the government is unable to protect them. I want to understand how to think about that. Yes, Your Honor. So, with regards to the future persecution claim, as Your Honor points out, the board errs in dismissing the future persecution claim relying wrongfully on the adverse credibility determination. In terms of how the… Well, the IJ actually looks at the objective evidence in the record and reaches the conclusion that there is discrimination but not persecution and no pattern and practice of persecuting LGBT individuals in Honduras. This decision, we believe, should have been reviewed de novo by the BIA and should be reviewed de novo by this court because whether evidence in the record, objective evidence in the record, rises to the level of persecution versus discrimination and whether the objective evidence in the record shows that there's a pattern and practice of persecuting LGBT Honduran men is a question of law, not a question of fact. We're not disputing, in terms of the future persecution claim, the facts in the record. Those are as established by the Department of State, by Amnesty International. We are disputing the IJ's findings that these facts do not rise to the level required by the statute. And this court… Can I just go on the point about future persecution? I'm not sure that the BIA's ruling on that can be disentangled from its finding that he never reported. So if that finding that he never reported was an error, then isn't its future persecution ruling unsupportable? Because as I read it, it says, turning to the issue of whether he can independently establish a future threat, we also affirm the immigration's determination that government authorities would not be unable or unwilling to protect him. These findings are supported by the fact that the appellate acknowledged at his final hearing that he never reported any act of harm he suffered to the police. If that's an error… Your Honor, the BIA's decision on future persecution is, as Your Honor mentioned, exactly tied into his claim of the adverse credibility finding as to past harm. But as we briefed in our brief, this is error. This court in Aguilar-Escoto has shown that in the context of future persecution, the IJ and the BIA have a requirement to put an adverse credibility issue aside as long as the factual premise, in this case that my client is an LGBT, HIV-positive man from Honduras, and analyze the claim of future harm independent of the adverse credibility finding. The immigration judge attempts to do this and then goes on to mischaracterize the evidence, but the BIA, as Your Honor mentioned, says that his claim of future harm is doomed by this adverse credibility finding, which is contrary to this court's decision in Aguilar-Escoto. Thank you, Ms. Norrodine. Thank you, Your Honor. Any further questions? Thank you. Your time is up. Okay. Thank you. Thank you. At this time, please mute your audio and your video. And, Attorney Bowen, please introduce yourself on the record to proceed. May it please the court, Jennifer Bowen on behalf of the respondent. To begin with, even if the court assumes that—let's start with the adverse credibility determination. Even if the court were to find that the first basis, in other words— Could you speak closer to the mic a little bit? I'm just having a little trouble. I apologize. I apologize, Your Honor. Can you hear me? Just barely. Oh, my gosh. I'm so sorry. I'm going to scream, if that's okay. I apologize. I don't know what else to do here. I can hear you now. Okay, great. We have an adverse credibility determination that relies on two bases. Even if the court were to find that the first basis was not supported by the record, the second basis, where the testimony adds information that's critical to his claim that's not included in the affidavit, the agency finds this is fatal to his past persecution claim. At that point— Where does it say that? That's where I'm having trouble. It says it's fatal in terms of the government's involvement, but that seems to me unclear whether that's talking about it's fatal to his claim that the government was involved in any of the incidents of persecuting him, not whether it meets the standard of being unable or unwilling. Your Honor, at the record, at page 72, it says, the court in this case does not find the respondent to be a credible witness in terms of crucial aspects of his claim, and his lack of credibility is ultimately fatal to his argument that he has suffered past persecution, period. Then goes on to explain this holding. Yeah, but that depends on both holdings. That's both findings. That's not just the taxi finding. You were making an argument that if we concluded that there was error as to one of the findings, we still could affirm, and then you're now quoting passage where it's relying on both findings. Yes, Your Honor, the agency did rely on both findings. But you were telling us that it wouldn't matter if one of the findings was wrong. Correct, Your Honor. Where in the agency's decision does it suggest that it's rejecting past persecution based solely on one of the findings? Your Honor, that is not in the agency's decision. However, given that the one decision, the one aspect, the omission itself would qualify under the Real ID Act. But it doesn't have, it's not a mandate to find that. It has to be found by the agency. But Your Honor, the agency did find that this basis supported an adverse credibility determination. In terms of the government's involvement in those incidents, there's nothing in the agency's decision saying that that omission alone destroys his credibility with respect to all aspects of his claim of past persecution bearing on unable and unwilling. I don't see anything that says that. Your Honor, this, I think maybe I'm not understanding. This is not a limited adverse credibility finding. No, it's not. It's a general adverse credibility finding based on two different findings of inconsistency. Yes, Your Honor. The premise of your argument to us, you said let's begin with what would happen if one of those two was wrong. Yes, Your Honor. I don't see anything in the agency's decision that suggests it would find the adverse credibility based on only one of those two as opposed to both. No, Your Honor. What I'm suggesting is that this court could find that it was harmless error in finding that the adverse credibility with respect to the asylum interview. But still find that the petitioner has not met his burden to show that the record compels a reversal. We typically under Chattery, we don't apply harmless error in that way. It's possible, but the agency wouldn't be compelled to reach that conclusion. If it had determined that he had reported instances to police, I at least can't tell what the agency would have done. Your Honor, the testimony is that he did not report incidents to the police. So even if they had not found him adverse credibility on that basis, his testimony is that he did not report. Well, he also said that he did report some. But that was to the asylum officer five years prior, and they're saying don't look at that. They're saying listen to my testimony. So with the adverse credibility, if he's found to be credible, then you look at the testimony before the immigration judge and the testimony before the immigration judge. Would the IJ not be allowed to look at that credible fear evidence in making a judgment? Of course the immigration judge would look at the credible fear. So that's what I'm saying. So under Chattery, since it's possible that it could come to that conclusion, we typically don't say we'll just guess what the IJ would do. We typically remand for the IJ to make a finding if it's made an error as to the findings it relied on. Your Honor, where the finding related to the omission between the affidavit and the testimony would support the adverse credibility determination, there's no basis for remand. Because it would still be a supported, the record would still support the adverse credibility finding. Would it compel it? That's not my burden, Your Honor. The burden is on Petitioner to show that even if you were to find one aspect of the credibility findings... It's your burden on harmless error. Your Honor, fair enough that I would need to show harmless error, but I show harmless error by showing that the record supports at least one aspect of the adverse credibility findings. You're puzzling, that's puzzling me when you say that. Yes, Your Honor. When the BIA says for two reasons, we rule X. Reason A and reason B lead us to say holding X. And then we find out that A is wrong. All right? Let's assume it's wrong. We don't know how the BA would have ruled just based on reason B. And under Chenry, don't we need to go back to the BIA and say, okay, reason A is off the table. There are other ways you might have reached this, but it's not our job to reach it for you. What do you think? Well, Your Honor, first off, I do want to state for the record that I'm not conceding that the agency erred with respect to the first one. It's merely for argument. Fair enough. Yes. But here, where the record does support this adverse credibility finding, and it's clear that under the – Yes, Your Honor. I just want to say, using the word support, which is a totally fair word to use if we were not looking at it from the harmless error perspective. But typically, it's not enough to show harmless error, just that the record could support a finding that would render it harmless. Typically, we say that there's got to be kind of overwhelming evidence. So obvious that it would compel that conclusion, so there's no reason for the remand. So that's, Your Honor, what I'm arguing with respect to the second case. But how can that be when there's evidence in the record of him having done reporting, which the IJ could rely on? It wouldn't be required to do so. It might still say, I privilege the testimony over it, but it would certainly be entitled to say, now that I see that I was wrong to say he never reported, and that actually he did at some point say, I did report, and that all he said is that he didn't report certain things, then no big deal. We don't know the IJ couldn't do that. But, Your Honor, we're still left with the basis for the adverse credibility finding between the discrepancy between his testimony and his affidavit. Which, in and of itself, supports the adverse credibility finding. Does it compel it? Your Honor, yes, it would compel it, because under the real IJ, after the INA, it is sufficient. Can I ask you, looking forward, what's the standard of review as far as future persecution? Is it de novo or clearly erroneous? For this court's review? Of what the BIA did, yes. Of what the BIA did? This court reviews the... I apologize, Your Honor, you're asking me whether this court's review of the BIA's holding that... There's an issue of objective evidence where some courts have held that the review of whether or not there's going to be, based on objective evidence, a reasonable fear of future persecution is reviewable de novo. Your Honor, we would argue that the review here for the future persecution claim is under the substantial record evidence standard. You would say that that's true both of the BIA's review of the IJ and of our review of BIA? So, on your review of the BIA decision, and on my brief at page 18, this court reviews factual findings including credibility determinations under the familiar substantial evidence standard. So, the factual finding of what the record shows with respect to future persecution... No, but you... I apologize. I'm not being clear. I understand that with adverse findings. I'm dealing with when you're looking forward and you have all these country reports... Yes, Your Honor. Even if you say, well, there was no past persecution for adverse finding, credibility finding, you're looking forward and you have these very scary, actually, country condition reports, right? And you have a government that's willing. I could see that because they've set up these commissions. But there's evidence that it has been unable to protect. So, the question is, what is the standard of review of the IJ's finding that there was no future, the reasonable fear of future persecution? That's not really a fact-finding. It's really a reasonable fear. It's sort of a mixed question, right? Yes, Your Honor. It could be presented... The board handled this by simply... I don't know if they... They were deferential, right? They were deferential. Is that right? Was that correct for them to be deferential to the IJ, who focused on this one sort of outlier blog, I forget the name of it, no one ever heard of, where there were country reports that said something stronger? Yes, Your Honor. So, the board was deferential to the immigration judges. As a trier of fact, he had the responsibility to weigh the evidence. In weighing the evidence, including the record reports, I mean, country reports, he found that the record did support a showing of discrimination, but it did not rise to the level of persecution. And so, the board affirmed that holding, and the focus on the 2014 report was simply him explaining the weight he would give to that report. That doesn't mean that the immigration judge didn't look at the reports elsewhere in the record. Was the BIA wrong to be deferential, or should it have been de novo review? For the weighing of evidence, Your Honor, it would not be de novo review. How about the reasonable fear determination? Well, this wouldn't have a reasonable... That's what we're talking about right now, the reasonable fear. Right, right, so that's de novo. Whether the IJ was correct about a reasonable fear looking forward, right? Well, if the immigration judge did not abuse his discretion, properly weighed the evidence, if there's no error in the weighing of the evidence, then there wouldn't be error in his determination that there wasn't... He didn't meet his burden to show a probability of future persecution. Maybe, I don't know if you're saying this, or you're not saying this. I apologize. No, no, that's not your fault. It's a complicated case, but in the BIA's decision, I read even its future persecution holding to be partially dependent on the adverse credibility finding. No, Your Honor, thank you for raising that. I made a note but hadn't reached there. So, Your Honor, if we go to the holding on the future persecution, which is at page 6 of the record, and they accept what he has testified to as true. So, it's not based on the adverse credibility finding at all. It's saying even if we accept his testimony that he never reported to the police, then this supports the immigration judge's finding that he did not meet his burden to show a probability of future persecution. Where do you see that? I apologize, it's at page 5, not page 6. And it says that... Oh, I was reading it. These findings are supported by the fact that the applicant acknowledged at his final hearing that he never reported any act of harm he suffered to the police. Yeah. So, that's accepting his testimony as true. Except that if that's wrong because he never said it. You're saying that the... The record doesn't show that he never reported anything to police because he earlier had said that he had reported to the police. Your Honor, he bore the burden of proof here to show a probability of future persecution. So, to the extent that he was represented by counsel and he never in his testimony did come forward and say that he did report to police. Okay. Thank you, Ms. Bowen. My apologies for the volume issues. Thank you. That concludes arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you may disconnect from the meeting.